Truck Ins Exch v Martin Trucking 















IN THE
TENTH COURT OF APPEALS
 

No. 10-93-163-CV

     TRUCK INSURANCE EXCHANGE,
                                                                                              Appellant
     v.

     E.H. MARTIN, INC., INDIVIDUALLY AND D/B/A
     E&M CONSTRUCTION CO.; ERNEST MARTIN,
     INDIVIDUALLY AND D/B/A ERNEST MARTIN
     TRUCKING CO.; AND TERRY J. LAWLEY,
                                                                                              Appellees
 

From the 82nd District Court
Falls County, Texas
Trial Court # 92-02-30929-CV
                                                                                                    

O P I N I O N
                                                                                                    

      Truck Insurance Exchange (Truck) appeals the trial court's denial of a summary judgment in
its favor and the granting of a summary judgment to Appellees, defendants below, (collectively
Martin). The case involved an insurance coverage dispute arising from Truck's alleged
cancellation of Martin's commercial automobile policy for non-payment of premiums effective
May 31, or alternatively June 20, both dates prior to the automobile accident in question, which
was the basis of the underlying case. Also involved in this appeal is the applicability in this
instance of the Texas Railroad Commission rules regarding notice of cancellation.
      Martin has asserted two cross-points—(1) that the trial court erred in denying its request for
attorney's fees incurred in defense of the declaratory judgment action and (2) that the court erred
in refusing to order Truck under article 21.55 of the Texas Insurance Code to reimburse Martin
for attorney's fees and costs incurred in defending this appeal.
      Truck relies primarily on the language regarding cancellation in the auto policy itself, which
provides that Truck could cancel the policy by mailing or delivering to the named insured written
notice of cancellation, stating the reason for cancellation (the failure to pay premiums, in this
case), at least ten days prior to the effective date of cancellation. Martin obtained replacement
coverage with Harco Insurance Company (Harco) effective June 20, 1991, prior to the accident. 
Harco sent a Certificate of Insurance to the Railroad Commission reflecting auto liability coverage
for Martin effective June 20, 1991. The Harco Certificate was accepted by the Railroad
Commission. According to Truck's declaratory judgment petition, Truck's cancellation was
effective on June 20, the same date that the Harco Certificate became effective, well prior to the
July 13 accident. 
      The primary issue in this appeal is whether Martin's policy with Truck had been effectively
cancelled before the accident by the Railroad Commission's acceptance of the Harco Certificate
of Insurance or whether Truck is obligated to provide what would essentially be double coverage
for the accident. Although Truck admitted that it had not complied with the cancellation terms of
an endorsement to the policy concerning cancellation of the endorsement (Form F)—by giving the
Railroad Commission thirty days' notice of endorsement cancellation—it claims it was exempt
from compliance by a Railroad Commission regulation. 
      In points one and two, Truck complains that the trial court erred in granting Martin's motion
for summary judgment and in failing to grant Truck's motion for summary judgment. In its third
point of error, Truck asserts that, even if the trial court did not err in finding that Martin's policy
with Truck was not cancelled before the accident, the trial court's summary judgment order
granted relief not requested by Martin and not supported by the summary judgment pleadings and
evidence. 
      We will reverse the summary judgment granted in favor of Martin against Truck and grant
the summary judgment which should have been rendered in favor of Truck.
FACTUAL BACKGROUND
The Accident and Underlying Suit
      On July 13, 1991, an employee of Martin was involved in a truck accident on the Gulf
Freeway in Houston. Mr. and Mrs. Salazar were the driver and the passenger of the vehicle
which was rear-ended by the eighteen-wheel Martin vehicle driven by Martin employee Terry
Lawley. Lawley was acting in the course of his employment at the time of the accident. The
Salazar vehicle then rear-ended the Scolton vehicle, injuring its driver and passenger, Jennifer
Procell and Lori Scolton.
      The Salazars sued Martin and Lawley, and the Scoltons intervened. Counsel provided jointly
by Harco and by Truck defended Truck in both the Salazar action as well as in the Scolton
intervention. Both actions were settled by Harco's payment of $725,000 on behalf of Martin and
Lawley. Truck did not participate in the settlement.
      Truck filed a declaratory judgment action against Martin, seeking a declaration that it had no
duty to defend or indemnify Martin in the Salazar-Scolton matter because Martin's policy had been
cancelled by Truck before the accident, although Truck admitted that it had not complied with the
cancellation terms of an endorsement to the policy. Truck claimed that it was exempt from
compliance by Railroad Commission regulation, Rule 5.185. Martin disagreed. 
      Truck and Martin filed cross-motions for summary judgment on the coverage question. The
court heard the summary judgment motions on May 6, 1993, and signed the order granting
Martin's summary judgment on July 20. Truck had no opportunity to affect the contents of the
order because its counsel did not receive a copy of Martin's proposed order until July 28. Truck
received its proposed order back and only learned on August 4 that the court had signed Martin's
order. Although Truck immediately mailed a motion to modify, the court's plenary power had
expired before it was filed.  
      Truck argues that the order in its present form fails to conform to the pleadings and the
evidence and fails to reflect the judgment rendered in the following respects:
a) The order declares that Truck had a duty to defend and indemnify Martin for the Salazar
and Scolton actions for the "$735,000.00" paid to settle those claims. The amount of the
settlement was $725,000, and that amount exceeds the $500,000 Truck policy limits. Martin
admits that the order signed by the trial court contained a typographical error and that the
proper amount to be indemnified should have been $725,000. The judgment also failed to
take into account the policy provision requiring coordination of the two policies, which the
court found to be in effect at the time of the accident;
b) The order expressly stated that the settlement of the underlying case was reasonable. 
Truck claims that no evidence was presented concerning the reasonableness of the settlement;
that the only issue before the court at the summary judgment hearing was whether the Truck
policy had been effectively cancelled before the accident; and c) Truck pleaded two policies
(the auto policy and the "umbrella" policy), while Martin's motion for summary judgment
sought only a declaration of coverage under the auto policy. The trial court's order did not
specify the policy under which Truck's duty to defend and indemnify Martin arose. 
Three Insurance Policies
      1. Truck's Business Automobile Policy
      Truck had insured Martin's trucking business since 1985. It issued a business automobile
policy, number 7577 36 24, for the policy period of July 21, 1990, to July 21, 1991, to E.H.
Martin, Inc. d/b/a E&M Construction Company (the "auto policy"). Endorsement TE 0032A
governing cancellation of the policy and of Endorsement Form F, which provided the mandatory
insurance coverage required by the Railroad Commission, was attached to the policy and filed with
affidavits in support of Truck's motion for summary judgment.
      2. The Umbrella Policy
      Truck issued a Texas Umbrella Liability Policy to Martin d/b/a E&M Construction Company
for July 21, 1990, to July 21, 1991. This policy, attached to Truck's motion for summary
judgment as an exhibit, was not mentioned in the trial court's order. Martin has not disputed that
Truck effectively cancelled the umbrella policy under the policy's own terms on May 31, 1991,
prior to the July 13 accident. Martin made no claim for coverage under the umbrella policy in its
motion for summary judgment in the trial court. 
      3. The Harco Business Automobile Policy
      Harco issued a business automobile policy to Martin, effective June 20, 1991. On July 12,
1991, the day before the accident in question, Harco executed a Form E, Uniform Motor Carrier
Bodily Injury and Property Damage Liability Certificate of Insurance, and transmitted it to the
Railroad Commission. The Railroad Commission accepted it effective June 20, 1991, as providing
the mandatory coverage for Martin.
STANDARD OF REVIEW
      The standards for reviewing a summary judgment are well-established. Nixon v. Mr. Property
Management, 690 S.W.2d 546, 548 (Tex. 1985). The movant has the burden of showing that no
genuine issue of material fact exists and that it is entitled to the summary judgment as a matter of
law. Id. Every reasonable inference must be indulged in favor of the non-movant and all doubts
resolved in its favor. Id. Evidence which favors the movant will be considered only if it is
uncontroverted. Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d
41, 47 (Tex. 1965).
      In reviewing a typical summary judgment with the defendants as movants, we must determine
whether the defendants met their burden by establishing that no genuine issue of material fact
exists. See Nixon, 690 S.W.2d at 548. A defendant moving for summary judgment without
asserting an affirmative defense must disprove as a matter of law one or more of the elements
essential to the plaintiff's cause of action. Anderson v. Snider, 808 S.W.2d 54, 55 (Tex. 1991).
       When both parties move for summary judgment, as in the present case, each party must carry
its own burden, and neither can prevail because of the failure of the other to discharge its burden. 
Federal Dep. Ins. Corp. v. Attayi, 745 S.W.2d 939, 941 (Tex. App.—Houston [1st Dist.] 1988,
no writ); The Atrium v. Kenwin Shops of Crockett, Inc., 666 S.W.2d 315, 318 (Tex.
App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); Hittner and Liberato, Summary Judgments
in Texas, 35 S. Tex. L. Rev. 9, 46 (1994) (hereinafter S.J. in Texas). When both parties move
for summary judgment and one motion is granted and the other overruled, all questions presented
to the trial court may be presented for consideration on appeal, including whether the losing
party's motion should have been overruled. Jones v. Strauss, 745 S.W.2d 898, 900 (Tex. 1988);
Tobin v. Garcia, 159 Tex. 58, 316 S.W.2d 396, 400-01 (1958); S.J. in Texas at 46. On appeal,
the party appealing the denial of its motion for summary judgment must properly preserve the
error by raising as a point of error the failure of the trial court to grant the appellant's motion. 
Buckner Glass & Mirror Inc. v. T.A. Pritchard Co., 697 S.W.2d 712, 714-15 (Tex. App.—Corpus
Christi 1985, no writ); Holmquist v. Occidental Life Ins. Co. of California, 536 S.W.2d 434, 438
(Tex. Civ. App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.); S.J. in Texas at 46. In the case
of cross-motions for summary judgment, an appellate court may reverse an improperly granted
summary judgment and render summary judgment for the opposing party, thus securing on appeal
a final resolution of the entire case. S.J. in Texas at 47; Hall v. Mockingbird AMC/Jeep, Inc., 592
S.W.2d 913 (Tex. 1979).
      Both Truck and Martin had the burden of showing, in their respective motions for summary
judgment, that they were entitled to summary judgment as a matter of law. Thus, the trial courts
had the power to declare the law as it applied to the Truck auto policy and any cancellation of that
policy. See Tex. R. Civ. P. 166a(c). Summary judgment in favor of Martin was proper only if
there was no genuine issue of material fact negating at least one element of Truck's cause of
action. See Black v. Victoria Lloyds Ins. Co., 797 S.W.2d 20 (Tex. 1990); Traylor v. UnitedBank
Orange, 675 S.W.2d 802, 804 (Tex. App.—Beaumont 1984, writ ref'd n.r.e.). The trial court's
determination of the applicable law and its application to the facts at hand to find coverage under
the Truck auto policy involved statutory construction of Railroad Commission Rule 5.185, a
question of law. See Johnson v. City of Fort Worth, 774 S.W.2d 653, 656 (Tex. 1989)
POINTS OF ERROR
      Truck contends in points one and two that the court erred in granting Martin's summary
judgment and in failing to grant Truck's motion. Truck points out that the main body of the policy
(excluding the endorsement coverage described below) can be effectively cancelled by sending
written notice ten days prior to the effective date of cancellation, if the reason for cancellation is
non-payment of premiums. (See Endorsement TE 0032A—TR). When Martin failed to pay the
premium due, Truck cancelled the policy under this provision, by letter dated May 16, 1991,
effective May 31, 1991.
      The Texas motor carrier laws require mandatory insurance coverage for truckers traveling on
public highways, and a certificate referring to that coverage was attached to the policy as Form
F. Tex. Rev. Civ. Stat. Ann. art. 911b, § 13 (Vernon Supp. 1994). Form F provides that it
cannot be cancelled without cancellation of the policy itself and that such cancellation may be
accomplished by the company or the insured giving thirty days' notice in writing to the Railroad
Commission, the thirty days to run from the date the notice is actually received in the
Commission's office. However, this cancellation procedure is not required if another insurance
company has insured the common carrier with replacement coverage. 16 Tex. R.R. Comm'n,
Tex. Admin. Code § 5.185 (1991). Truck did not send notice of cancellation of endorsement
Form F to the Railroad Commission until after the Salazar-Scolton accident had occurred. It is
Truck's position that Rule 5.185 of the Railroad Commission applied to alleviate the notice
requirement to the Commission, and that Truck owed no further duty to Martin under Texas law
after Harco's replacement policy became effective.
      Martin asserts that the trial court properly determined that Truck owed coverage and the costs
of defense for the Salazar accident according to policy # 7577 36 24. Martin relied on two
grounds to obtain summary judgment. It alleged that the Truck auto policy was in effect on July
13, 1991, by its express terms, and that Truck failed to follow the mandatory procedure prescribed
for the cancellation of the policy prior to the accident. Although the trial court's order did not
specify which of Martin's theories it adopted in granting summary judgment, Truck argues that
neither theory entitled Martin to summary judgment as a matter of law, because the endorsement
was cancelled by operation of law before the accident when Harco's replacement coverage became
effective.
      Martin contended that coverage existed under the express terms of the Truck auto policy, and
alternatively, that coverage by Truck existed because of Truck's alleged failure to follow the
mandatory procedure prescribed for the cancellation of its endorsement prior to the accident. We
disagree. There is no question that the Harco policy was in effect at the time of the accident. The
Railroad Commission recognized Harco's policy covering Martin as of June 20, 1991, and Truck
was excused from giving the requisite thirty days' notice to the Railroad Commission. See id. 
Harco not only defended but alone settled with Martin.
      Furthermore, Truck complied with its own policy provisions regarding cancellation. Form
F served only to amend the policy to provide the mandatory insurance for auto bodily injury and
property damage liability in accordance with state motor carrier law or regulations promulgated
by any state commission having jurisdiction, to the extent of the coverage and limits of liability.
      The cancellation provision at issue in this case, section three of Form F, states that the
endorsement may not be cancelled without cancellation of the policy to which it is attached. 
Although Truck admits that it did not send notice of cancellation of the endorsement and policy
to the Railroad Commission until after the accident, nevertheless, by the terms of endorsement
Form F itself, the only portion remaining to be cancelled by giving thirty days' notice to the
Railroad Commission was Form F—the endorsement. The policy itself had been cancelled by its
own terms for non-payment of premiums.
      To understand what Form F required, one must look to the state motor carrier laws and
regulations issued by the Railroad Commission to determine what are "the coverage and limits of
liability required thereby" and to the rules regarding cancellation of endorsement Form F,
specifically Rule 5.185. Because the trial court apparently accepted Martin's argument that Form
F required thirty days' notice of cancellation to the Railroad Commission before the policy could
ever be effectively cancelled, the trial court did not address the applicability of Rule 5.185 as it
pertained to the Form F cancellation.
      The Motor Transportation Regulations of the Railroad Commission contain the following
exception to the thirty days' cancellation notice requirement to the Commission. It is this
exception on which Truck relies:
Section 5.185
 
TERMINATION. Except when replaced by another acceptable policy or certificate of
insurance, surety bond, proof of qualifications of self insurer . . . no surety bond, policy,
or certificate of insurance or other security or agreement shall be cancelled or withdrawn
until thirty days notice in the form prescribed by the State Board of Insurance has been
given to the Commission by the insurance company or surety or sureties.
16 Tex. R.R. Comm'n, Tex. Admin. Code § 5.185 (1991) (emphasis added).
      Under this Railroad Commission rule, the thirty days' notice of cancellation requirement does
not apply when a certificate of insurance is replaced by another acceptable policy or certificate of
insurance, thus triggering termination of endorsement Form F as soon as the Commission accepted
Harco's replacement policy. Rule 5.185 excuses the thirty-day notice requirement once
replacement coverage becomes effective, assuming ultimate approval by the Railroad Commission;
therefore, the "laws and regulations" promulgated by the Railroad Commission were complied
with once Harco's policy was accepted. It is undisputed that the Railroad Commission accepted
Harco's replacement certificate of insurance effective June 20, 1991. The uncontroverted
summary judgment testimony of Charles E. Miller, Supervisor of the Insurance Section of the
Railroad Commission, established that the Commission had accepted Harco's certificate of
insurance effective June 20, 1991. He testified that the Railroad Commission records reflect that
Harco's certificate of insurance was in effect on July 13, 1991, the date of the accident. He also
testified that the purpose of Rule 5.185 is to allow an insurance company which overlooked
sending a Form K cancellation notice to the Commission to "get out" of the thirty-day notice
requirement as long as the new insurance carrier had filed evidence of its coverage with the
Commission. Miller further testified that the Railroad Commission recognized the June 20, 1991,
effective date of Harco's policy and that a previous carrier is allowed to cancel coverage effective
the same date that the new insurance carrier's coverage went into effect. Harco obviously believed
it was the replacement insurer prior to the accident, as evidenced by its payment of $725,000 on
Martin's behalf.
      The plain language of Endorsement F only required Truck to provide the compulsory
insurance to Martin for thirty days "in accordance with the rules" of the Railroad Commission. 
The Commission itself promulgated the rule which excuses an insurance company from
compliance with the cancellation notice requirement on its compulsory coverage if a new insurance
company has assumed the risk. Truck was excused from compliance with the specific terms of
Endorsement F attached to its policy. See id.
      Because we reverse the summary judgment in favor of Martin and grant Truck's motion for
summary judgment, we do not reach Truck's point three or Martin's cross-points.
CONCLUSION
      We sustain points one and two. We reverse the summary judgment in favor of Martin and
render summary judgment for Truck, declaring that it had no duty to defend or indemnify Martin
or Lawley for the Salazar-Scolton lawsuit.
 
                                                                               BILL VANCE
                                                                               Justice
Before Chief Justice Thomas,
      Justice Cummings, and
      Justice Vance
Reversed and rendered
Opinion delivered and filed May 11, 1994
Publish